1  John L. Cooper (State Bar No. 5030 ORIGINAL
       jcooper@fbm.com                    FILED
2  Scott Andrews (State Bar No. 243690)
       sandrews@fbm.com                  AUG 2 8 2009
3  Farella Braun & Martel LLP
   235 Montgomery Street            RICHARD W. WIEKING
4  San Francisco, CA  94104         CLERK, U.S. DISTRICT COURT,
   Telephone:   (415) 954-4400   NORTHERN DISTRICT OF CALIFORNIA
5  Facsimile:   (415) 954-4480

6  Attorneys for Defendant
   ORRICK, HERRINGTON & SUTCLIFFE LLP
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                SAN FRANCISCO DIVISION

11             CV 09        4013

12  SiRF TECHNOLOGY, INC.,

13            Plaintiff,               Case No. _____

14        vs.                          NOTICE OF REMOVAL OF CIVIL
                                       ACTION FROM STATE COURT
15  ORRICK, HERRINGTON & SUTCLIFFE
    LLP,                               28 U.S.C. §§ 1331, 1338, 1441, 1446
16
            Defendant.                 [Superior Court of California for the County of
                                       San Mateo Case No. CIV 486654]
17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF REMOVAL OF CIVIL ACTION
FROM STATE COURT

23695\2025045.1

1   TO THE CLERK OF THE ABOVE-ENTITLED COURT AND TO PLAINTIFF AND ITS

2   ATTORNEYS OF RECORD:

3          PLEASE TAKE NOTICE that defendant Orrick, Herrington & Sutcliffe LLP ("Orrick")

4   hereby removes to this Court, pursuant to 28 U.S.C. §§ 1331, 1338, 1441, and 1446, the state

5   court action entitled *SiRF Technology, Inc. v. Orrick, Herrington & Sutcliffe LLP* ("*SiRF v.*

6   *Orrick*"), commenced in the Superior Court of the State of California for the County of San

7   Mateo on August 6, 2009, as case number CIV 486654, received by Orrick by email August 7,

8   2009.  The grounds for removal are as follows:

9                                        **INTRODUCTION**

10          1.     *SiRF v. Orrick* is a civil action brought in a State court, the Superior Court of the

11  State of California for the County of San Mateo, by plaintiff SiRF Technology, Inc. ("SiRF").

12  SiRF filed its complaint in that court on August 6, 2009.  A true and correct copy of the complaint

13  is attached hereto as Exhibit A.

14                                        **JURISDICTION**

15          2.     This district court has original jurisdiction over *SiRF v. Orrick* because it arises

16  under Acts of Congress relating to patents, including 19 U.S.C. § 1337(a)(1)(B) and 35 U.S.C. §

17  271.  *See* 28 U.S.C. § 1338(a) (giving jurisdiction over patent matters to U.S. district courts).

18  Such jurisdiction is exclusive of the courts of the states.  *Id.*

19                                        **REMOVAL**

20          3.     The United States District Court for the Northern District of California and its San

21  Francisco Division encompass San Mateo County, where *SiRF v. Orrick* is pending.

22          4.     On August 7, 2009, Orrick received from the law firm of Antoni Albus, LLP, the

23  initial complaint in this action, which set forth the claims for relief upon which this action is

24  based, and a letter.  A true and correct copy of the letter is attached hereto as Exhibit B.  Orrick

25  has not been served with the complaint or any other process.

26          5.     The complaint asserts the following causes of action:  (1) professional negligence;

27  (2) breach of contract; (3) breach of fiduciary duty; and (4) misrepresentation/failure to disclose.

28  (Compl. ¶¶ 29–47.)

NOTICE OF REMOVAL OF CIVIL ACTION               - 2 -                    23695\2025045.1
FROM STATE COURT

1       6.    Each of plaintiff's claims are based on the alleged actions and omissions of Orrick

2  during Orrick's representation of SiRF in patent-infringement investigations by the U.S.

3  International Trade Commission called Investigation No. 337-TA-602, *In re Certain GPS Devices*

4  *and Products Containing Same*, and Investigation No. 337-TA-596, *In re Certain GPS Chips,*

5  *Associated Software and Systems and Products Containing Same*.  SiRF was a respondent in

6  Investigation No. 337-TA-602 (the '602 investigation) and a complainant in Investigation No.

7  337-TA-596 (the '596 investigation).  The complainant in the '602 investigation alleged that

8  SiRF and others unlawfully had imported devices that infringed the complainant's patents under

9  United States patent laws.  In the '596 investigation, SiRF alleged that respondent Global Locate,

10  Inc., unlawfully had imported devices that infringed SiRF's patents under United States patent

11  laws.

12       7.    Resolution of SiRF's claims in the case at bar will require resolution of issues of

13  United States patent law that are within the exclusive federal jurisdiction of the United States

14  district courts.

15       **ORRICK HAS COMPLIED WITH THE PROCEDURAL REQUIREMENTS FOR**

16                                   **REMOVAL**

17       8.    A defendant seeking to remove a civil action from a state court must file a notice

18  of removal "in the district court of the United States for the district and division within which

19  such action is pending." 28 U.S.C. § 1446(a); *see also* 28 U.S.C. § 1441(a) (where original

20  jurisdiction exists, action "may be removed … to the district court of the United States for the

21  district and division embracing the place where such action is pending").  This action is pending

22  in the Superior Court of the State of California for the County of San Mateo.  The U.S. District

23  Court for the Northern District of California includes the counties of San Francisco and San

24  Mateo. 28 U.S.C. § 84(a).  The San Francisco Division includes San Francisco and San Mateo

25  counties.  Civil L.R. 3-2(d).  Therefore, this Notice of Removal is properly filed in the San

26  Francisco Division of this Court.

27       9.    This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil

28  Procedure, and copies of all process, pleadings, and orders delivered (even though not served) on

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

NOTICE OF REMOVAL OF CIVIL ACTION
FROM STATE COURT      - 3 -      23695\2025045.1

1    Orrick in this action are attached as Exhibit A.  28 U.S.C. § 1446(a).

2        10.    Attached hereto as Exhibit C are true and correct copies of all papers Orrick has

3    filed and served in the state-court action.

4        11.    This Notice of Removal is timely under 28 U.S.C. § 1446(b) because it is filed

5    within thirty days after Orrick received the complaint in this action on August 7, 2009.

6        12.    Pursuant to 28 U.S.C. § 1446(d), written notice of the filing of this Notice of

7    Removal and a copy of this Notice of Removal will be served promptly upon SiRF and filed with

8    the Clerk of the Superior Court of California for the County of San Mateo.

9                                         **VENUE**

10       13.    As noted above, the Northern District of California includes the counties of San

11   Francisco and San Mateo, *see* 28 U.S.C. § 84(a), and this action is pending in the Superior Court

12   of the State of California for the County of San Mateo.  Because the Northern District of

13   California is the district in which this action is pending, venue is proper under 28 U.S.C. §

14   1441(a).

15                             **INTRADISTRICT ASSIGNMENT**

16       14.    This case arose in San Mateo County and San Francisco County because a

17   substantial part of the events or omissions which give rise to the claims occurred there.  (Compl.

18   ¶¶ 2, 13.)  Removal of this action to the San Francisco Division of this Court is therefore proper.

19   Civil L.R. 3-2(d); 28 U.S.C. § 1441(a).

20

21       WHEREFORE, Orrick hereby removes this action now pending against it in the Superior Court

22   of California for the County of San Mateo, to this Court.

23

24   DATED:  August 27, 2009                    FARELLA BRAUN & MARTEL LLP

25

26                                              By:  John L. Cooper
                                                     John L. Cooper

27                                              Attorneys for Defendant Orrick

28

Farella Braun & Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

NOTICE OF REMOVAL OF CIVIL ACTION        - 4 -                          23695\2025045.1
FROM STATE COURT

**EXHIBIT A**

JOHN ANTONI (SBN 163738)
ANTONI ALBUS, LLP
11836 W. Pico Boulevard
Los Angeles, CA 90064
Phone: 310-954-8020
Facsimile: 310-954-8988
Email: antoni@aallp.net

Attorneys for Plaintiff SiRF
Technology, Inc.

**ENDORSED FILED**
SAN MATEO COUNTY

AUG 0 6 2009

Clerk of the Superior Court
By ___R. Lopez___
DEPUTY CLERK

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN MATEO

(UNLIMITED JURISDICTION)

CIV 4 8 6 6 5 4

| | |
|---|---|
| SiRF TECHNOLOGY, INC. a Delaware Corporation; | CASE NO.: |
| Plaintiff, | COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY AND NEGLIGENT MISREPRESENTATION |
| V. | |
| ORRICK, HERRINGTON & SUTCLIFFE LLP, a California Limited Liability Partnership. | [DEMAND FOR JURY TRIAL] |
| Defendants. | |

Plaintiff SiRF Technology, Inc. alleges as follows:

**THE PARTIES**

1.     Plaintiff SiRF Technology, Inc. ("Plaintiff" or "SiRF") is a Delaware corporation with its principal place of business at 217 Devcon Drive, San Jose, California.

2.     SiRF is informed and believes, and thereon alleges, that Defendant Orrick, Herrington & Sutcliffe, LLP ("Defendant" or "Orrick") is a limited liability partnership with law offices throughout the United States and California, including an office located at 1000 Marsh Road, Menlo Park, San Mateo County, California, 94025. Orrick is organized and existing under

-1-

FILED BY FAX

1  the laws of the State of California and lists its principal executive office at 405 Howard Street,

2  San Francisco, California, 94105.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

4  3. At all relevant times, SiRF was engaged in the business of designing and

5  supplying commercial Global Positioning System ("GPS") receiver chips, associated software

6  and systems to customers for use in a wide variety of GPS end user devices and systems, such as

7  personal navigation devices, cellular telephones, personal digital assistants, automotive

8  navigation systems, asset tracking devices and fleet management tracking systems. In 2007,

9  Global Locate, Inc. ("Global Locate") was a competitor of SiRF in this market sector.

10  4. At all times alleged herein, Orrick held itself out as having specialized knowledge

11  and skill in patent litigation, and in particular, possessing extensive expertise in representing both

12  patentees and accused infringers in actions, including before the United States International

13  Trade Commission ("ITC"). As an independent, nonpartisan, quasi-judicial federal agency, the

14  ITC maintains the authority, pursuant to Section 337 of the Tariff Act of 1930, as amended, 19

15  U.S.C. § 1337 ("Section 337"), to investigate claims of patent, trademark, and copyright

16  infringement. Section 337 investigations address unfair acts and unfair methods of competition

17  in the importation of articles into the United States, the sale for importation, and/or the sale in the

18  United States after importation. Upon finding a violation of Section 337, the Commission may

19  issue an exclusion order (enforced by U.S. Customs and Border Protection) that bars infringing

20  products from entry into the United States. The Commission may also issue cease and desist

21  orders that bar named respondents from engaging in unfair acts in violation of Section 337.

22  Section 337 investigations are tried before administrative law judges, whose determinations are

23  subject to review by the Commission and the potential issuance of the above-described orders.

24  5. On or about April 2, 2007, Global Locate filed a complaint with the ITC, styled *In

25  the Matter of Certain GPS Devices and Products Containing Same, Inv. No. 337-TA-602,*

26  naming SiRF and four of SiRF's customers, E-TEN Corp, Pharos Science & Applications, Inc.

27  ("Pharos"), MiTAC International Corporation and Mio Technology Limited ("Mio"), as

28  respondents (collectively "Respondents"). Global Locate requested in its complaint that,

-2-

1   pursuant to Section 337, the ITC commence an investigation into the sale of certain GPS chips,

2   associated software, systems and products made for, by and/or sold by Respondents, by reason of

3   infringement of six Global Locate patents, specifically U.S. Patent Nos.: 6,417,801 ("'801

4   Patent"); 6,606,346 ("'346 Patent"); 6,651,000 ("'000" Patent); 6,704,651 ("'651 Patent");

5   6,937,187 ("'187 Patent"); and 7,158,080 ("'080 Patent") (collectively, the "Patents").

6        6.    For its part, SiRF filed a separate complaint with the ITC, styled *In the Matter of*

7   *Certain GPS Chips, Associated Software and Systems and Products Containing Same, Inv. No.*

8   *337-TA-596.* In that complaint, SiRF requested, pursuant to Section 337, that the ITC commence

9   an investigation into the sale of certain GPS chips, associated software and products

10   made for, by and/or sold by Global Locate, on the basis that the accused products and devices

11   allegedly infringed certain SiRF patents. The ITC subsequently initiated an investigation of

12   SiRF's claims against Global Locate (hereinafter, "596 Investigation").

13        7.    On May 7, 2007, the ITC initiated an investigation of Global Locate's claims

14   against Respondents (hereinafter, "602 Investigation"). Global Locate subsequently amended its

15   complaint to add Broadcom Corporation ("Broadcom") as a complainant, following Broadcom's

16   acquisition of Global Locate in or about June 2007. Broadcom and Global Locate are hereinafter

17   collectively referred to as "Complainants." The 596 Investigation and 602 Investigation are

18   hereinafter collectively referred to as "Investigations."

19        8.    The GPS technology at issue in the 602 Investigation can be summarized as

20   follows: GPS refers to a satellite navigation system comprising thirty-two satellites orbiting

21   Earth. This system allows a GPS-enabled receiver to determine its position by detecting signals

22   from at least four GPS satellites and using information received from those satellites to compute

23   its distance from each other and its precise position on Earth—through a process called

24   "trilateration." The signals transmitted by the GPS satellites include a "pseudo-random number,"

25   or PRN, code and a "navigation," or NAV, message. The PRN code is a unique code that

26   identifies each GPS satellite. A GPS receiver determines the source of a GPS satellite signal by

27   comparing a detected PRN code with a copy on the receiver of each of the codes corresponding

28   to the thirty-two GPS satellites. Through this process, known as "correlation," the GPS receiver

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY
DUTY AND NEGLIGENT MISREPRESENTATION

1  also determines its distance from the detected satellite. The NAV message transmitted by each

2  satellite contains further information necessary for calculating the position of a GPS receiver,

3  including: (i) when the signal was transmitted; (ii) the location and trajectory of the satellite,

4  which is also called "satellite ephemeris" data; and (iii) the positions of the other satellites in the

5  system, or the "almanac." The NAV message takes as long as 18-30 seconds to detect, and it is

6  difficult or even impossible to detect in many environments where GPS signals are weak, such as

7  certain urban areas. Assisted-GPS allows GPS receivers to download NAV messages over the

8  Internet or some other communication link, instead of detecting the messages directly from the

9  satellite. Even using Assisted-GPS, however, a GPS receiver requires a constant Internet

10  connection or a link to a server that transmits the NAV messages, because satellite ephemeris

11  data is valid for only a limited period of time.

12       To address the shortcoming in GPS and Assisted GPS, SiRF developed and sold a line of

13  products and software, specifically: (i) SiRF's optional InstantFix service that operates with

14  SiRFStarIII and InstantGPS chips, and (ii) SiRF's SyncFreeNav software embedded in

15  SiRFStarIII chips (collectively "Accused Products"). SiRF provided its InstantFix service

16  through its Server Generated Extended Ephemeris ("SGEE") server located outside of the United

17  States. The SGEE downloaded GPS satellite information from certain third party sources and

18  used this data to generate extended ephemeris or "EE" files, designed to predict future satellite

19  orbit data. SiRF provided access to the EE files to its customers, which in turn were able to

20  make the EE files available to their customers, the mobile device end users. As to the

21  SyncFreeNav, this software, which SiRF embedded in its chips, implemented a "least-squares"

22  algorithm to calculate the position of a GPS receiver. Complainants maintained that the Accused

23  Products infringed the Patents. SiRF disputed those contentions.

24       9.    In April and May 2007, SiRF engaged in a series of communications with Orrick

25  concerning the possibility of Orrick serving as lead defense counsel for Respondents in the 602

26  Investigation, and as SiRF's co-counsel in the 596 Investigation. These communications focused

27  largely on Orrick's potential involvement in the 602 Investigation. On or about April 6, 2007,

28  Fabio Marino, Esq. a partner with Orrick, provided SiRF with a lengthy written presentation

-4-

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY
DUTY AND NEGLIGENT MISREPRESENTATION

detailing the reasons why SiRF should retain the firm's services.  In an effort to induce SiRF to hire Orrick as its lead counsel in the 602 Investigation, Orrick represented in writing that:

   a.   Orrick was the best choice to defend SiRF in the 602 Investigation

   b.   The ITC was known for the exceptional speed with which patent cases proceeded to trial;

   c.   Most ITC investigations reached trial before less experienced attorneys were able to assess their positions in the case;

   d.   Orrick was very familiar with the expedited timelines associated with ITC investigations and possessed the skills and resources required to properly defend SiRF in the 602 Investigation;

   e.   If SiRF agreed to retain Orrick, Orrick intended to assemble a team of experienced patent and trial attorneys who understood the GPS technology at issue in the investigations and possessed extensive trial experience before the ITC;  ·

   f.   William Anthony would lead Orrick's team and act as lead trial counsel; and

   g.   The estimated legal fees for Orrick's services would range between $3 million and $4 million.

   10.   On or about May 25, 2007, SiRF and Orrick executed an engagement agreement ("Agreement"), the material terms of which were as follows:

   a.   Orrick agreed to represent Respondents in the 602 Investigation and to represent SiRF in the 596 Investigation;

   b.   Orrick would bill SiRF on an hourly basis for its services, at a rate ranging between $355 and $745, depending on the experience of the particular Orrick attorney performing the legal task.  These billing rates were subject to adjustment annually. Orrick agreed to notify SiRF in advance of any such adjustments;

   c.   Orrick agreed to discount its billing rates by ten (10%) percent for the first $4 million in fees billed to SiRF, and twelve and one half (12.5%) percent for any fees in excess of that sum;

-5-

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY
DUTY AND NEGLIGENT MISREPRESENTATION

d.    Orrick would submit invoices to SiRF on a monthly basis for legal fees and certain costs incurred; and

e.    Orrick reserved the right to withdraw from its engagement for nonpayment of fees or for any other reason authorized or required by the applicable rules of professional responsibility.

11.    Following execution of the Agreement, Defendant represented SiRF in the 602 Investigation until November 11, 2008.  During that roughly seventeen (17) month period, Orrick submitted invoices to SiRF totaling approximately $14 million in legal fees and costs, sums four (4) times greater than Orrick originally estimated when it first sought to procure representation of SiRF in the Investigations.  Of the amounts billed by Orrick, SiRF paid Orrick more than $7 million.

12.    In or about January 2008, Defendant designated Dr. Stephen Heppe as an expert witness in the 602 Investigation to render certain expert opinions concerning the three subject areas of GPS technology embraced by the patents, the validity of the Patents, and whether the Accused Products infringed any of the Patents.   By comparison, Complainants designated three expert witnesses to testify regarding the three areas of GPS technology at issue, with each expert opining only as to one technology area.

13.    On or about February 25, 2008, Dr. Heppe prepared an expert report concerning the validity of the Patents ("Validity Report").   Thereafter, on or about March 10, 2008, Dr. Heppe prepared an expert report addressing whether the Accused Products infringed any of the Patents ("Infringement Report").  The Validity Report and Infringement Report are hereinafter collectively referred to as "Reports."  SiRF is informed and believes and thereon alleges that Orrick attorneys were intimately and actively involved in all aspects of the preparation of the Reports, including gathering and preparing the underlying source materials, reviewing, drafting,and revising the Reports, and reviewing, revising and approving all opinions and positions asserted in the Reports.  SiRF is further informed and believes and thereon alleges that the final versions of the Reports were physically prepared at Orrick's offices under the direction and supervision of Orrick attorneys.

-6-

14.     In mid March 2008, Orrick attorneys deposed Complainants' expert witnesses. SiRF is informed and believes and thereon alleges that as a consequence of those depositions, Orrick discovered that certain deficiencies and omissions existed in the validity and infringement analysis set forth in the Reports.  In an effort to correct these deficiencies, Orrick directed Dr. Heppe to prepare two supplemental expert reports ("Supplemental Reports").  Between April 4 and April 8, 2008, Dr. Heppe generated the Supplemental Reports, under the direction and supervision of Orrick.

15.     In April 2008, Orrick served the Supplemental Reports on Complainants' counsel, notwithstanding that the deadline for the parties to exchange export reports in the 602 Investigation lapsed nearly a month prior.  SiRF is informed and believes that Orrick was aware in April 2008 that the Supplemental Reports were not timely served, yet never sought relief from the presiding Administrative Law Judge ("ALJ"), the Honorable Carl C. Charneski, to supplement the expert opinions set forth in the Reports.  Along with failing to ensure the admissibility of the Supplemental Reports, at no time prior to trial did Orrick ever disclose to SiRF the existence of the Supplemental Reports, the circumstances which necessitated their preparation, the fact that the Supplemental Reports were untimely served or that the opinions contained in the Supplemental Reports might later be excluded from evidence due to Orrick's failure to comply with the ALJ's procedural orders.

16.     In April 2008, Complainants' counsel deposed Dr. Heppe.  Plaintiff is informed and believes that Dr. Heppe's examination highlighted a number of material inconsistencies in the validity analysis and infringement analysis offered in the Reports and revealed that Orrick had adopted certain positions in the 602 Investigation concerning the validity of the Patents which compromised Respondents' infringement defenses.  At no time following Dr. Heppe's deposition, did Orrick ever disclose to SiRF the existence of any conflicting opinions contained in the Reports, the potential ramifications of these inconsistent positions, or the fact that Orrick had previously taken certain positions on the validity of the Patents prior to completing its infringement analysis that materially compromised the contentions Orrick intended to advance as to why the Accused Products did not infringe the Patents.

-7-

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY AND NEGLIGENT MISREPRESENTATION

1   17. In lieu of disclosing these attorney errors, Orrick repeatedly advised SiRF

2 between January and the August 8, 2008 Initial Determination (discussed below), that

3 Respondents would likely prevail on most if not all of Complainant's infringement claims.

4 Specifically, Orrick advised SiRF that the ALJ would find that Respondents had not infringed

5 the '346, '000, '080 and '651 Patents.  Orrick further advised SiRF that even if the ALJ found

6 infringement, the consequences of such a ruling were fairly inconsequential: the most likely

7 remedy Complainants would obtain, if any, was a cease and desist order directing SiRF to refrain

8 from inducing customers to combine SiRF chips with SiRF's InstantFix service.  At no time did

9 Orrick ever advise SiRF that the ITC could issue a cease and desist order prohibiting SiRF from

10 engaging in the following activities in the United States: importing, testing, selling, marketing,

11 advertising, distributing, offering for sale, or transferring, and soliciting U.S. agents or

12 distributors for, any allegedly infringing SiRF products.

13   18. On April 22, 2008, the Investigative Staff of the ITC's Office of Unfair Import

14 Investigations (also a party to the 602 Investigation), submitted its pre-hearing statement,

15 recommending to the ALJ that Respondents had not infringed the '346, '000, '080 and '651

16 Patents.

17   19. From April 28 through May 13, 2008, the parties to the 602 Investigation

18 participated in an evidentiary hearing ("Hearing") before the ALJ.  Following the Hearing,

19 Orrick advised SiRF that the proceedings had gone well and continued to maintain that

20 Respondents would likely prevail on most if not all claims asserted by Complainants.

21   20. On August 8, 2008, the ALJ issued a 216-page Initial Determination "("ID") in

22 favor of Complainants, finding violations of Section 337 by each of the Respondents and with

23 respect to each of the six Patents.  The ALJ concluded that: (i) each of the six Patents was valid

24 and enforceable; (ii) each of the six Patents was infringed by SiRF's accused products; and (iii) a

25 "domestic industry" existed with respect to each of the six Patents.  In reaching his conclusions,

26 the ALJ rejected virtually all patent claim constructions advanced by Orrick, and instead adopted

27 essentially each and every claim construction advanced by Complainants.  Contrary to the legal

28 ///

-8-

1 advice provided by Orrick, Respondents did not prevail on a single substantive defense asserted

2 in the 602 Investigation.

3     21.   In rendering the ID, the ALJ made numerous statements critical of the defense

4 presented by Orrick at the Hearing, including that:

5         a.   the evidence offered by Orrick in support of Respondents' inequitable

6 conduct defense to the validity of the '346 Patent, that Global Locate deceived the Patent Office

7 by identifying Charles Abraham and Donald L. Fuchs rather than Yi-Hsiu Wang as the true

8 inventor, was "meager, unclear and not sufficiently reliable to carry the hearing burden of

9 showing the '346 patent [was] unenforceable." The ALJ further noted that the evidence lacked

10 corroboration and questioned Orrick's failure to question Mr. Abraham when he took the stand at

11 Hearing "about such a vital element of respondents' inequitable conduct case." The ALJ

12 concluded that "[s]uch a failure to question Abraham, given respondents' accusations, [was] a

13 significant, if not curious omission";

14         b.   the evidence offered by Orrick in support of Respondents' construction of

15 Claim 1 of the '346 Patent, that "segments of a C/A reference code" refers to "a portion that is an

16 integer factor of the full block length or epoch length," contradicted positions Orrick had

17 previously taken in the 602 Investigation with respect to this claim term. The ALJ noted that

18 Orrick offered "no expert testimony or other evidence to indicate why the claimed invention

19 would have to be implemented only with code segments of equal length";

20         c.   the evidence offered by Orrick in support of Respondents' construction of

21 Claim 1 of the '346 Patent, regarding the meaning of "inner product," flatly contradicted

22 positions Orrick previously asserted during the 602 Investigation with respect to this claim term,

23 and was directly contrary to the construction previously offered in the Validity Report;

24         d.   the evidence offered by Orrick in support of Respondents' construction of

25 Claim 11 of the '346 Patent, regarding the meaning of "a tuner for removing Doppler shift from

26 the digitized signal and producing an in-phase (I) signal and a quadrature (Q) signal" conflicted

27 with the proposed construction of this term set forth in the Validity Report. The ALJ noted that

28 the Validity Report stated that the "claimed tuner is met by a system which first generates I and

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY
DUTY AND NEGLIGENT MISREPRESENTATION

1  Q signals in one circuit and removes Doppler later in the digital correlator" which the ALJ

2  determined was "the exact opposite order required by respondents' current construction," and

3  suggested that respondents sought "to add a requirement to create a noninfringement position."

4          e.     Orrick was precluded from presenting any invalidity evidence as to Claims

5  4 and 11 of the '346 Patent, in support of Respondents' anticipation defense that the GPS

6  Acquisition Module ("GAM") constituted prior art, because such evidence was first introduced

7  in the Supplemental Reports. The ALJ concluded that the reports were not timely served, that

8  Orrick had failed to adhere to the procedural rules of the investigation, and on that basis, the ALJ

9  excluded the Supplemental Reports from evidence;

10         f.     the evidence offered by Orrick in support of Respondents' construction of

11  Claims 1, 2 and 22 of the '080 Patent, regarding the meaning of "long term satellite tracking

12  data" contradicted the construction of this term previously advanced in the Validity Report.

13  Applying the construction contained in the Validity Report, the ALJ concluded that Respondents

14  had conceded that the Accused Products possessed long term satellite tracking data and infringed

15  the '080 Patent;

16         g.     the ALJ rejected the construction advanced by Orrick of Claims 1 of the

17  '000 Patent, that the term "satellite signals" should be construed as "signals emanating from a

18  satellite," and infringement analysis of this claim, on the basis that the numerous changes of

19  position by Respondent's expert, Dr. Heppe, at the Hearing from the opinions articulated in the

20  Reports, adversely affected his credibility, and caused the ALJ to give "little weight" to his

21  testimony.

22         h.     the evidence offered by Orrick in support of Respondents' claim

23  construction of Claims 1 of the '651 Patent, regarding the meaning of "using the ephemeris to

24  reduce code and frequency uncertainty in the mobile GPS receiver to improve acquisition

25  sensitivity of the mobile GPS receiver" contradicted the claim construction of this term

26  previously advanced in the Validity Report;

27         i.     with regard to the construction of Claim 2 of the '801 Patent, Orrick

28  offered competing testimony from Dr. Heppe and SiRF's principal software engineer, Dr.

-10-

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY
DUTY AND NEGLIGENT MISREPRESENTATION

1    Chansarkar, as to the meaning of the claim term "wherein said pseudoranges are sub-millisecond

2    pseudoranges." The ALJ noted that Dr. Heppe testified that claim 2 was "devoid of meaning,"

3    notwithstanding that Dr. Chansarkar previously testified at the Hearing as to the phrase's

4    meaning, an interpretation which the ALJ concluded to be consistent with Complainants'

5    proposed construction of the term;

6            j.      Orrick failed to present any expert evidence in support of Respondents'

7    contention that they had not infringed Claims 1, 2 and 11 of the '801 Patent. The ALJ noted that

8    "[i]t is undisputed that respondents' expert conceded infringement during the hearing that he

9    only provided testimony concerning the validity question." SiRF is informed and believes that

10   Respondents' expert was prepared to offer such expert testimony but that Orrick failed to elicit

11   such opinions during direct examination;

12           k.      the evidence offered by Orrick in support of Claim Construction of Claim

13   1 of the '187 Patent, concerning the meaning of "forming a dynamic model relating to a plurality

14   of states" contradicted previous positions Orrick had taken in the 602 Investigation with respect

15   to this claim term. The ALJ noted that the Validity Report and Infringement Report set forth

16   competing opinions as to whether a "least squares" algorithm constituted a "static" or "dynamic"

17   model. The ALJ adopted the construction set forth in the Validity Report to conclude that the

18   Accused Products infringed the '187 Patent; and

19           l.      Orrick was precluded from presenting certain evidence and expert

20   testimony as to the construction of Claim 9 of the '187 Patent, because such evidence was first

21   introduced in the excluded Supplemental Reports.

22       22.    Between February 2008 and the commencement of the Hearing, had Orrick: (i)

23   properly advised SiRF of the complete range of potential remedies the ITC could conceivably

24   impose against Respondents if Complainants prevailed in the 602 Investigation; (ii) properly

25   advised SiRF of the potential consequences to SiRF if the ITC issued an exclusion order

26   preventing SiRF from importing the Accused Products into the U.S.; (iii) properly advised SiRF

27   of the potential consequences to SiRF if the ITC issued a cease and desist order preventing SiRF

28   from selling any of the inventory of Accused Products SiRF maintained at that time in the U.S.;

-11-

1  and (iv) disclosed the extensive deficiencies of its representation of Respondents, the conflicting

2  and binding positions Orrick had advanced concerning the validity of the Patents and the non-

3  infringement of the Accused Products, and the potential adverse consequences of these legally

4  inconsistent allegations at trial; SiRF could have and would have secured a superior outcome to

5  the 602 Investigation than Orrick achieved.  Plaintiff cannot divulge the specifics of this superior

6  outcome in a public pleading, the details of which requires the issuance of a protective order by

7  this Court prior to disclosure.

8      23.    Following the issuance of the ID, SiRF and the ITC's investigative attorney each

9  filed petitions for review.  On October 9, 2008, the ITC determined that it would review the

10 ALJ's findings that: (i) Global Locate had standing to assert the '346 patent; (ii) SiRF directly

11 infringed claim 1 of the '651 patent through its commercial activities; and (iii) SiRF directly

12 infringed claim 1 of the '000 patent through its commercial activities.

13     24.    On November 18, 2008, SiRF filed a petition for reconsideration of the ITC's

14 determination not to review the ALJ's finding that claim 1 of the '187 patent and claims 1, 2 and

15 11 of the '801 patent recite patent-eligible subject matter under 35 U.S.C. Section 101.  The ITC

16 denied the petition for reconsideration.

17     25.    On January 15, 2009, the ITC issued its final determination, concluding that

18 Respondents had violated Section 337.  At that time, the ITC also issued a limited exclusion

19 order prohibiting the unlicensed entry of certain GPS devices manufactured abroad or imported

20 by, or on behalf of, SiRF, and a cease and desist order against the domestic respondents—SiRF,

21 Mio and Pharos—prohibiting the importation and sale of Accused Products in the U.S.  The

22 ITC's determination became final on March 16, 2009.  Respondents subsequently appealed the

23 ITC's determination to the U.S. Court of Appeals for the Federal Circuit.

24     26.    On October 3, 2008, SiRF requested in writing that Orrick turn over all

25 documents relating to the Investigations (exclusive of those documents containing Complainants'

26 confidential business information which were subject to the protective orders issued in the

27 Investigations) including "all Orrick work-product (including all legal memoranda), prosecution

28 file histories of all six patents-in-suit, prior art files, expert witness files, correspondence,

-12-

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY
DUTY AND NEGLIGENT MISREPRESENTATION

1  pleadings, trial materials and notebooks, demonstrative exhibits, and GPS tutorials." After a

2  month's delay and several subsequent requests, Orrick turned over a portion of the underlying

3  files to SiRF's successor counsel, and represented to SiRF in writing on October 28, 2009, that it

4  limited its delivery to "copies of all documents related to this case that are necessary [in Orrick's

5  sole judgment] for them to effectively represent SiRF in this matter."

6        27.    On October 29, 2008, SiRF reiterated its written request that Orrick turn over to

7  SiRF all client files not subject to any protective order. On November 4, 2008, Orrick responded

8  in writing, stating that Defendant could not comply with SiRF's request out of a concern that

9  documents such as correspondence, e-mails and internal memoranda generated in connection

10  with the Investigations, while not designated as subject to any protective order, might

11  conceivably reference Complainants' confidential business information, and therefore, could not

12  be released to SiRF without reviewing each and every page. While declining to deliver these

13  materials directly to SiRF, Orrick represented in writing that the firm was "working diligently on

14  completing the process of transferring the entire file" to successor counsel. Contrary to this

15  representation, SiRF is informed and believes and thereon alleges that Orrick did not turn over

16  the entire file to successor counsel, but rather withheld significant portions of the underlying

17  documents, including emails, memoranda and other internally generated documents.

18        28.    From November 2008 through May 2009, SiRF reiterated in writing, on

19  numerous occasions, its demand that Orrick relinquish the entire underlying litigation file.

20  Orrick has steadfastly refused to comply with these requests and has to date, refused to even

21  identify the documents it withheld from SiRF and SiRF's successor counsel. Moreover, Orrick

22  has declined to candidly respond to SiRF's written inquiries as to whether Defendant disposed of

23  any of the underlying documents, particularly electronically stored copies of documents and

24  communications generated by and between Orrick attorneys. Orrick carefully avoided answering

25  this question by stating, on May 20, 2009, that it had no intention in the future of destroying any

26  duplicate copies of SiRF client files currently in its possession. Orrick patently declined to

27  confirm or deny whether Orrick had previously destroyed any underlying documents.

28  ///

-13-

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY
DUTY AND NEGLIGENT MISREPRESENTATION

### FIRST CAUSE OF ACTION

### Professional Negligence – Against Orrick

29.     SiRF re-alleges and incorporates herein by reference each and every allegation set forth in paragraphs 1- 28 above.

30.     As SiRF's legal counsel in the Investigations, Orrick owed a duty of care to Plaintiff. By virtue of the acts and omissions described above, Orrick negligently breached that duty to SiRF by:

a.     failing to properly advise SiRF of the scope of potential remedies to which SiRF could be subjected if Complainants prevailed in the 602 Investigation, and the potential consequences to SiRF;

b.     failing to complete its analysis of Respondents' infringement positions prior to serving the Invalidity Report;

c.     adopting positions during the 602 Investigation regarding the validity of the Patents which materially compromised Respondents infringement defenses at the Hearing;

d.     failing to ensure that the Reports were complete and set forth all expert opinions and supporting evidence Orrick intended to offer at the Hearing;

e.     on learning of the deficiencies of the Reports, failing to take the necessary steps to ensure that the Supplemental Reports would be admissible at the Hearing;

f.     failing to advise SiRF of the conflicting opinions contained in the Validity and Infringement Reports, the deficiencies in these reports which necessitated the preparation of the Supplemental Reports, the untimely service of the Supplemental Reports, and the need to seek relief from the ALJ in order to present the evidence contained in the Supplemental Reports at the Hearing;

g.     failing to disclose the extent of the deficiencies in Orrick's legal representation to SiRF prior to the Hearing, and the extent to which Orrick's negligence would likely permit Complainants to prevail on every claim asserted by in the 602 Investigation; and

h.     incompetently presenting Respondents' defense at trial.

///

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY AND NEGLIGENT MISREPRESENTATION

31.     As a direct result of Orrick's misconduct, Orrick caused SiRF to suffer damages in the amount to be proven at trial, but at least in an amount in excess of the jurisdictional minimum of this Court.

## SECOND CAUSE OF ACTION

### Breach of Contract - Against Orrick

32.     SiRF re-alleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-28 and 30, above.

33.     By virtue of the Agreement, a contract existed between Orrick and SiRF, pursuant to which Orrick agreed to provide legal services to SiRF in connection with the 596 and 602 Investigations.

34.     Orrick failed to timely, properly, competently and with due care render legal services to SiRF, in breach of its contract with SiRF.

35.     Plaintiff performed all conditions, covenants, and promises required on its part to be performed in accordance with the contract, with the exception of those conditions which Plaintiff was prevented and/or relieved from performing by the acts and omissions of Orrick.

36.     As a direct result of Defendants' breach of the Agreement, SiRF has suffered damages in an amount to be proven at trial but not less than the approximately $7 million SiRF paid to Orrick.

## THIRD CAUSE OF ACTION

### Breach of Fiduciary Duty - Against Orrick

37.     SiRF re-alleges and incorporates herein by reference each and every allegation set forth in paragraphs 1-28 above.

38.     A client's retention of a law firm gives rise to a fiduciary relationship between the parties.  The scope of an attorney's fiduciary obligations are determined as a matter of law based on the California Rules of Professional Conduct, together with other statutes and general principles relating to other fiduciary relationships.  These fiduciary duties include duties of care and loyalty, an obligation to keep the client informed, and on termination, a duty to promptly

///

-15-

1  release to the client, at the client's request, all client papers and property, irrespective of whether

2  the client has paid for those materials. See, Cal. Prof. Conduct Rules 3-700(D) and 4-100(B)(4).

3      39.    By virtue of the Agreement and Orrick's representation of SiRF in the

4  Investigations as Plaintiff's legal counsel, Orrick was a fiduciary of SiRF.  Orrick breached its

5  fiduciary duties to SiRF by refusing to: (i) deliver SiRF's entire client files to SiRF's successor

6  counsel; (ii) deliver directly to SiRF those portions of SiRF's client files which did not reference

7  Complainants' confidential business information; (iii) inform SiRF as to the nature and quantity

8  of documents Orrick chose not to turn over to SiRF's successor counsel and the basis for that

9  decision; and (iv) candidly respond to SiRF's inquiries as to whether Orrick had in fact, spoliated

10  any documents generated in connection the Investigations.

11      40.    SiRF is informed and believes and thereon alleges that Orrick intentionally

12  engaged in these obfuscation tactics to conceal from SiRF the nature and extent of the

13  deficiencies of Orrick's representation of SiRF in the Investigations. Orrick's actions were

14  contrary to SiRF's best interests and were done in the absence of good faith and with a reckless

15  disregard for Defendant's fiduciary obligations to its former client.

16      41.    Orrick's fiduciary duties to SiRF also included the obligation that Orrick would

17  perform the legal services in an efficient and cost effective manner, would not pad or engage in

18  deceptive and abusive billing practices, would charge litigation costs and expenses to SiRF at its

19  own cost and without increase and that Orrick exercise its fiduciary duty in respect to its fees,

20  billings and costs charged.

21      42.    As another separate and distinct breach of its fiduciary duty to SiRF, Orrick

22  committed the following wrongful acts and omissions:

23      a.    Improperly staffed the underlying legal actions resulting in unnecessary

24  and excessive fees;

25      b.    Failed to properly instruct, direct, assign, monitor and supervise the work

26  of attorneys and support staff, resulting in the unnecessary and duplicative expenditure of time

27  and excessive and unnecessary fees and costs;

28  ///

COMPLAINT FOR PROFESSIONAL NEGLIGENCE, BREACH OF CONTRACT, BREACH OF FIDUCIARY
DUTY AND NEGLIGENT MISREPRESENTATION

1         c.     Failed to implement or utilize recognized and accepted cost-saving

2 practices and procedures; and

3         d.     Charged to and collected from SiRF litigation costs in excess of the costs

4 Orrick expended or incurred in for the ITC action.

5     43.    As a direct result of Orrick's misconduct, SiRF has been damaged in an amount to

6 be proven at trial, but at least in an amount in excess of the jurisdictional minimum of this Court.

7 Additionally, Orrick's actions were intentional and wrongful, and were conducted with

8 oppression and malice so as to justify an award of punitive damages against Defendant.

### FOURTH CAUSE OF ACTION

### Misrepresentation/Failure to Disclose - Against Orrick

11     44.    SiRF re-alleges and incorporates herein by reference each and every allegation set

12 forth in paragraphs 1-28 and 30 above.

13     45.    At all times relevant, Orrick was under a duty to disclose to SiRF all information

14 reasonably necessary for SiRF to make informed decisions about the ITC matter. Indeed,

15 Orrick's fiduciary duty to SiRF required it to disclose and not withhold any information even if

16 such information was detrimental to Orrick.

17     46.    Orrick breached this duty to SiRF, by among other things, failing to disclose each

18 and every item specified in paragraph 30 (e) through (g).

19     47.    As a direct result of Orrick's failures and wrongdoing alleged herein, SiRF was

20 damaged in amounts not fully known or calculable at present but which will be presented at trial

21 of this matter.

### PRAYER FOR RELIEF

23 WHEREFORE, Plaintiff SiRF Technology, Inc. prays for judgment as follows:

24 As to the First and Fourth Causes of Action

25 1.    For actual damages according to proof at trial;

26 2.    For costs of suit incurred herein; and

27 3.    For such pre and post judgment interest and such other and further relief as the

28 Court may deem proper.

-17-

1    As to the Second Cause of Action:

2        1.      For actual damages according to proof at trial, but in an amount not less than

3    $7,000,000;

4        2.      For costs of suit incurred herein; and

5        3.      For such pre and post judgment interest and such other and further relief as the

6    Court may deem proper.

7    As to the Third Cause of Action:

8        1.      For actual damages according to proof at trial;

9        2.      For punitive damages according to proof at trial;

10       3.      For costs of suit incurred herein; and

11       4.      For such pre and post judgment interest and such other and further relief as the

12   Court may deem proper.

13

14   Dated: August 6, 2009                           ANTONI ALBUS, LLP

15

16                                       By: _____

17                                           JOHN ANTONI
                                             Attorneys for Plaintiff SiRF
18                                           Technology, Inc.

19

20

21

22

23

24

25

26

27

28

-18-

**EXHIBIT B**

# ANTONI ALBUS, LLP

ATTORNEYS AT LAW
11836 W. PICO BLVD.
LOS ANGELES, CA 90064
(TEL) (310) 954-8020
(FAX) (310) 954-8988

DIR: (310) 954-8922
EMAIL: Antoni@aallp.net

AUGUST 7, 2009

**VIA EMAIL & OVERNIGHT MAIL**
lbrewer@orrick.com

Lisa A. Brewer, Esq.
General Counsel
Orrick, Herrington & Sutcliffe LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669

> Re:   **SiRF Technology, Inc. v. Orrick, Herrington & Sutcliffe, LLP**
>        **San Mateo County Case No. CIV486654**

Dear Ms. Brewer:

Our firm represents SiRF Technology, Inc. ("SiRF") in connection with SiRF's claims against Orrick, Herrington & Sutcliffe, LLP ("Orrick"), arising in connection with Orrick's representation of SiRF before the ITC, specifically, In the Matter of Certain GPS Devices and Products Containing Same, Inv. No. 337-TA-602 and In the Matter of Certain GPS Chips, Associated Software and Systems, and Products Containing Same, Inv. No. 337-TA-596.

On August 6, 2009, SiRF filed a complaint against Orrick in San Mateo Superior Court, a copy of which is enclosed for your review.  We wish to present Orrick with the opportunity to explore a negotiated resolution through mediation.  Please advise us as to whether Orrick is willing to agree to mediation, and if so, please provide us with the names of three proposed neutrals by August 21, 2009.

ANTONI ALBUS LLP
AUGUST 7, 2009
P A G E | 2

If you wish to discuss this matter, please do not hesitate to contact me directly.  Thank you for your attention.

Sincerely,

ANTONI ALBUS, LLP

JOHN ANTONI

JA/ms

**EXHIBIT C**

1   John L. Cooper (State Bar No. 50324)
        jcooper@fbm.com
2   Scott Andrews (State Bar No. 243690)
        sandrews@fbm.com
3   Farella Braun & Martel LLP
    235 Montgomery Street
4   San Francisco, CA  94104
    Telephone:    (415) 954-4400
5   Facsimile:    (415) 954-4480

6   Attorneys for Defendant
    ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9              IN AND FOR THE COUNTY OF SAN MATEO

10                        UNLIMITED JURISDICTION

11

12  SiRF TECHNOLOGY, INC.,                    Case No. CIV 486654

13              Plaintiff,                    **ANSWER OF ORRICK, HERRINGTON &
                                              SUTCLIFFE LLP TO UNVERIFIED
14       vs.                                  COMPLAINT**

15  ORRICK, HERRINGTON & SUTCLIFFE
    LLP,
16
                Defendant.
17

18  ORRICK, HERRINGTON & SUTCLIFFE
    LLP,
19
                Cross-Complainant,
20
         vs.
21
    SiRF TECHNOLOGY, INC.,
22
                Cross-Defendant.
23

24

25

26

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23695\2027186.2

1     In accordance with Section 431.30(d) of the California Code of Civil Procedure,

2   Defendant Orrick Herrington & Sutcliffe LLP ("Defendant") generally denies each and every

3   material allegation in the unverified complaint.

4                                **AFFIRMATIVE DEFENSES**

5     Defendant incorporates into each of the following affirmative defenses all denials and

6   defenses asserted elsewhere in this pleading, except to the extent they are inconsistent, in which

7   case Defendant reserves the right to plead in the alternative.  Defendant alleges the following

8   additional reasons as to why Plaintiff SiRF Technology, Inc. ("Plaintiff") is not entitled to recover

9   anything by way of the allegations in its complaint:

10          **FIRST AFFIRMATIVE DEFENSE — TO ENTIRE COMPLAINT**

11                        **(FAILURE TO STATE A CLAIM)**

12    Plaintiff fails to allege in its complaint facts sufficient to state a cause of action against

13  Defendant.

14        **SECOND AFFIRMATIVE DEFENSE — TO ENTIRE COMPLAINT**

15                  **(LACK OF SUBJECT MATTER JURISDICTION)**

16    This action is barred because this court has no jurisdiction over the subject of the causes

17  of action alleged in the complaint.  Jurisdiction is vested exclusively in the district courts of the

18  United States because the claims alleged arise under the patent laws of the United States.

19          **THIRD AFFIRMATIVE DEFENSE — TO ENTIRE COMPLAINT**

20                              **(PREEMPTION)**

21    This action is barred because it is preempted by federal law concerning patents.

22  Jurisdiction over disputes arising under patent laws is vested exclusively in the district courts of

23  the United States.

24        **FOURTH AFFIRMATIVE DEFENSE — TO ENTIRE COMPLAINT**

25                    **(SPECULATIVE CLAIMS OF CAUSATION)**

26    Plaintiff's claims are barred because any alleged causation of damage to Plaintiff as a

27  result of any of Defendant's conduct or omissions is so speculative as to bar any recovery.

28

Farella Braun + Martel LLP
Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 2 -                                                     23695\2027186.2

ANSWER TO UNVERIFIED COMPLAINT // Case No. CIV 486654

**FIFTH AFFIRMATIVE DEFENSE — TO ENTIRE COMPLAINT**

**(SPECULATIVE CLAIMS OF DAMAGE)**

Plaintiff's claims are barred because any damage alleged to have been suffered by Plaintiff as a result of any of Defendant's conduct or omissions is so speculative as to bar any recovery.

**SIXTH AFFIRMATIVE DEFENSE — TO ALL CAUSES OF ACTION**

**(SPECULATIVE INJURY)**

No relief may be obtained under the complaint by virtue of the speculative nature of SiRF's alleged injuries.

**SEVENTH AFFIRMATIVE DEFENSE — TO CAUSE OF ACTION FOR BREACH OF CONTRACT**

**(UNCERTAINTY)**

The allegations in the complaint are uncertain as to whether the contract alleged was written or oral and are further uncertain because the terms of the alleged contract are uncertain.

**EIGHTH AFFIRMATIVE DEFENSE — TO CAUSE OF ACTION FOR BREACH OF CONTRACT**

**(FAILURE TO ALLEGE WHETHER CONTRACT WRITTEN OR ORAL)**

It cannot be ascertained from the complaint whether the alleged contract is written or oral or whether the terms of any such contract were written or oral.

**NINTH AFFIRMATIVE DEFENSE — TO CAUSE OF ACTION FOR PROFESSIONAL NEGLIGENCE**

**(COMPARATIVE FAULT)**

Any damage to Plaintiff as claimed in the complaint was caused by Plaintiff's own conduct, including the conduct of Plaintiff's counsel retained in the underlying matters after Defendant ceased to represent Plaintiff in those matters. Plaintiff did not resolve by mutual agreement the alleged investigations and other underlying disputes with third parties. Such failure to act proximately caused Plaintiff to suffer some or all of the injury it alleges in the complaint. Defendant advised Plaintiff to resolve, by mutual agreement with third parties, the

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 3 -

23695\2027186.2

ANSWER TO UNVERIFIED COMPLAINT // Case No. CIV 486654

1    underlying investigations and disputes; Plaintiff did not follow that advice. Defendant's fault for

2    the injury alleged in the complaint, if any, is reduced in totality or in the proportion to the injury

3    to Plaintiff that was caused by its own conduct and that of its counsel retained in the underlying

4    matters after Defendant ceased to represent Plaintiff in those matters. Plaintiff's acts and

5    omissions in not resolving the underlying investigations and disputes by mutual agreement were

6    done without the exercise of ordinary care, caution and prudence.

7    **TENTH AFFIRMATIVE DEFENSE — TO CAUSE OF ACTION FOR PROFESSIONAL**

8    **NEGLIGENCE**

9    **(WILLFUL MISCONDUCT)**

10    Any damage to Plaintiff as claimed in the complaint was caused by Plaintiff's own

11    conduct, including the conduct of Plaintiff's counsel retained in the underlying matters after

12    Defendant ceased to represent Plaintiff in those matters. Defendant advised Plaintiff to resolve,

13    by mutual agreement with third parties, the underlying investigations and disputes; Plaintiff

14    refused that advice. Plaintiff made an informed decision to not resolve by mutual agreement the

15    alleged investigations and other underlying disputes with third parties. Such decision and failure

16    to act proximately caused Plaintiff to suffer some or all of the injury it alleges in the complaint.

17    Such decision and failure to act was deliberate and intentional on the part of Plaintiff, the

18    successor attorneys and other agents, and was done with knowledge or appreciation of the harm

19    and risk of harm that was likely to result and did, in fact, result. Plaintiff's decision and failure to

20    act was unreasonable and dangerous in that it knew or should have known that it was highly

21    probable that the specific harm that did result would be caused by such decision and failure to act.

22    In the face of such knowledge and constructive knowledge, Plaintiff consciously failed to resolve

23    the underlying investigations and disputes by mutual agreement. Defendant's fault for the injury

24    alleged in the complaint, if any, is reduced in totality or in the proportion to the injury to Plaintiff

25    that was caused by its own deliberate conduct and that of its counsel retained in the underlying

26    matters after Defendant ceased to represent Plaintiff in those matters.

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 4 -

23695\2027186.2

ANSWER TO UNVERIFIED COMPLAINT // Case No. CIV 486654

1  **ELEVENTH AFFIRMATIVE DEFENSE — TO CAUSE OF ACTION FOR BREACH OF**

2  **CONTRACT**

3  **(PLAINTIFF'S BREACH)**

4       Plaintiff breached the contract alleged in the complaint by, among other acts and

5  omissions, failing to pay on time and as agreed the fees, costs, and other charges due from

6  Plaintiff to Defendant.

7  **TWELFTH AFFIRMATIVE DEFENSE — TO ALL CAUSES OF ACTION**

8  **(MITIGATION OF DAMAGES)**

9       Plaintiff failed to mitigate its damages by, among other acts and omissions, failing to

10  resolve by mutual agreement the underlying investigations and disputes with third parties.

11  Defendant advised Plaintiff to resolve, by mutual agreement with third parties, the underlying

12  investigations and disputes; Plaintiff refused that advice.

13  **THIRTEENTH AFFIRMATIVE DEFENSE — TO ALL CAUSES OF ACTION**

14  **(ASSUMPTION OF RISK)**

15       Defendant advised Plaintiff to resolve, by mutual agreement with third parties, the

16  underlying investigations and disputes.  Plaintiff assumed the risk of an adverse result in the

17  underlying investigations and disputes by refusing Defendant's advice to resolve them by mutual

18  agreement with third parties.

19  **FOURTEENTH AFFIRMATIVE DEFENSE — TO ALL CAUSES OF ACTION**

20  **(UNCLEAN HANDS)**

21       Plaintiff is guilty of wrongful conduct in connection with the transactions alleged in the

22  complaint and in connection with the subject matter of the complaint including, among other

23  things, its failure to pay Defendant for legal services rendered to Plaintiff, for associated costs,

24  and for other charges related to the provision of those legal services.

25  **FIFTEENTH AFFIRMATIVE DEFENSE — TO ALL CAUSES OF ACTION**

26  **(FAILURE TO DO EQUITY)**

27       No relief may be obtained under the complaint by virtue of the Plaintiff's failure to do

28  equity in the matters alleged in the complaint and cross-complaint filed in this action including,

Farella Braun + Martel LLP
Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 5 -

23695\2027186.2

ANSWER TO UNVERIFIED COMPLAINT // Case No. CIV 486654

1    among other things, Plaintiff's failure to pay Defendant for legal services rendered to Plaintiff, for

2    associated costs, and for other charges related to the provision of those legal services.

### SIXTEENTH AFFIRMATIVE DEFENSE — TO ENTIRE COMPLAINT

### (UNCERTAINTY)

5    The allegations in the complaint are so uncertain as to preclude any recovery by Plaintiff.

7    DATED: August 27, 2009                           FARELLA BRAUN & MARTEL LLP

                                                        By: _John L. Cooper_
                                                             John L. Cooper

                                                        Attorneys for Defendant
                                                        ORRICK, HERRINGTON & SUTCLIFFE LLP

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 6 -

23695\2027186.2

ANSWER TO UNVERIFIED COMPLAINT // Case No. CIV 486654

1   John L. Cooper (State Bar No. 50324)
        jcooper@fbm.com
2   Scott Andrews (State Bar No. 243690)
        sandrews@fbm.com
3   Farella Braun & Martel LLP
    235 Montgomery Street
4   San Francisco, CA  94104
    Telephone:    (415) 954-4400
5   Facsimile:    (415) 954-4480

6   Attorneys for Defendant
    ORRICK, HERRINGTON & SUTCLIFFE LLP

7

8               IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   IN AND FOR THE COUNTY OF SAN MATEO

10                          UNLIMITED JURISDICTION

11

| | |
|---|---|
| 12  SiRF TECHNOLOGY, INC., | Case No. CIV 486654 |
| 13          Plaintiff, | **ORRICK, HERRINGTON & SUTCLIFFE LLP'S CROSS-COMPLAINT FOR BREACH OF ENGAGEMENT AGREEMENT, QUANTUM MERUIT, QUANTUM VALEBANT AND UNJUST ENRICHMENT** |
| 14       vs. | |
| 15  ORRICK, HERRINGTON & SUTCLIFFE LLP, | |
| 16          Defendant. | |
| 17 | |
| 18  ORRICK, HERRINGTON & SUTCLIFFE LLP, | |
| 19          Cross-Complainant, | |
| 20       vs. | |
| 21  SiRF TECHNOLOGY, INC., | |
| 22          Cross-Defendant. | |
| 23 | |

24

25      Cross-Complainant Orrick, Herrington & Sutcliffe LLP alleges as follows:

26                          **THE PARTIES**

27      1.      Cross-Complainant Orrick, Herrington & Sutcliffe LLP ("Orrick") is a limited

28   liability partnership providing legal services, with offices in Menlo Park and San Francisco,

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

23695\2027158.3

1  California, among other locations.  Orrick is organized and exists under the laws of the State of

2  California and has its principal offices in San Francisco, California.

3       2.     Cross-Defendant SiRF Technology, Inc. ("SiRF") is a Delaware corporation with

4  its principal place of business in San Jose, California.

5  **FACTUAL ALLEGATIONS**

6       3.     At all times hereinafter mentioned, Orrick was and now is a limited liability

7  partnership providing legal services through attorneys-at-law who are duly licensed to practice in

8  the jurisdictions in which they practice law.

9       4.     On May 25, 2007, Orrick was engaged by SiRF pursuant to a mutually executed

10  written engagement agreement under which SiRF engaged Orrick to provide legal services to

11  SiRF in connection with *In re Certain GPS Devices and Products Containing Same*, U.S.

12  International Trade Commission Investigation No. 337-TA-602 and *In re Certain GPS Chips,*

13  *Associated Software and Systems, and Products Containing Same*, U.S. International Trade

14  Commission Investigation No. 337-TA-596.  A true and correct copy of the executed engagement

15  agreement is attached hereto as Exhibit A ("Engagement").

16       5.     In connection with the above-mentioned investigations and disputes, Orrick

17  performed various legal services which were necessary for the legal representation of SiRF,

18  advanced various litigation expenses required by that representation, and purchased on SiRF's

19  behalf various goods required for that representation.  Orrick did so in accordance with the terms

20  of the Engagement.

21       6.     Orrick paid debts owed directly by SiRF to third parties for items provided in

22  connection with the above-mentioned investigations and disputes.

23       7.     Orrick and its attorneys working on the SiRF matters have considerable experience

24  and expertise in the areas of patent and importation law involved in the above-mentioned

25  investigations as well as in the technical aspects of SiRF's products and services that were at

26  issue in the investigations.  Orrick and those attorneys enjoy good reputations among their peers

27  in the legal profession.

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 2 -

23695\2027158.3

ORRICK'S CROSS-COMPLAINT AGAINST SiRF // Case No. CIV 486654

8.      Orrick and its attorneys and staff spent a great many hours rendering the above-mentioned necessary legal services in its representation of SiRF.  The legal and factual issues in the above-mentioned investigations were complex and required substantial, sophisticated legal analysis to be performed by Orrick to represent SiRF.

9.      The legal services provided by Orrick and the costs incurred by Orrick on SiRF's behalf (including the purchase of goods) had a total combined value to SiRF, and a total combined reasonable value, of approximately $18 million.

10.     Orrick submitted invoices to SiRF for legal services, costs, and goods in accordance with the terms of the Engagement.  The amount invoiced was approximately $13.7 million.

11.     SiRF has not paid the full amount due on the invoices submitted to it by Orrick.

12.     During and at the conclusion of the attorney-client relationship between Orrick and SiRF, Orrick made demand upon SiRF for the payment of the reasonable value of the services rendered by Orrick on SiRF's behalf in the above-mentioned investigations, and for reasonable costs (including value of goods purchased) incurred by Orrick on SiRF's behalf in those matters.

13.     On or about the November 11, 2008, SiRF discharged Orrick as its attorneys representing it in the above-mentioned investigations and retained other counsel.

14.     During the period of time that Orrick represented SiRF in the above-mentioned investigations, SiRF received the benefit of Orrick's professional efforts on SiRF's behalf. Following the discharge of Orrick by SiRF, SiRF employed new counsel to represent it in the above-named investigations.  The product of Orrick's work on behalf of SiRF was utilized by SiRF's subsequent counsel for the benefit of SiRF in further representation of SiRF in the investigations and in disputes related to the International Trade Commission investigations.

15.     Orrick has received only approximately $7.15 million in payments from SiRF for the legal services rendered by Orrick on behalf of SiRF in the above-mentioned investigations, and for reasonable costs incurred by Orrick on SiRF's behalf in those matters, including the fair value of goods purchased.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 3 -

23695\2027158.3

ORRICK'S CROSS-COMPLAINT AGAINST SiRF // Case No. CIV 486654

16.     Orrick has not been compensated by any third party for the services it rendered to SiRF in the investigations or for reasonable costs incurred by Orrick on SiRF's behalf in those matters, including for the goods purchased.

## FIRST CAUSE OF ACTION

### Breach of Engagement Agreement — Against SiRF

17.     Orrick re-alleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 to 16, above.

18.     Orrick was contractually engaged by SiRF to render professional legal services on behalf of and for SiRF.

19.     Orrick demanded payment by SiRF pursuant to the terms of the Engagement agreement.

20.     SiRF breached the Engagement agreement by failing to pay Orrick's fees and expenses.

21.     Orrick performed all conditions, covenants, and promises required on its part to be performed in accordance with its engagement by and representation of SiRF, with the exception of certain conditions and services which SiRF prevented Orrick from performing.

22.     As a direct result of SiRF's breach of the engagement agreement, Orrick has suffered damages in an amount to be proven at trial but not less than approximately $6.5 million.

## SECOND CAUSE OF ACTION

### Quantum Meruit — Against SiRF

23.     Orrick re-alleges and incorporates herein by reference each and every allegation set forth in paragraphs 1 to 16, above.

24.     At SiRF's request and engagement, Orrick rendered professional legal services to SiRF and incurred and paid related expenses on behalf of SiRF.

25.     SiRF agreed to pay Orrick the fair value of the services rendered to SiRF by Orrick, as well as the fair value of litigation costs advanced by Orrick.

26.     Orrick demanded that SiRF pay for the legal services rendered to it and the expenses incurred on behalf of it.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 4 -

23695\2027158.3

ORRICK'S CROSS-COMPLAINT AGAINST SiRF // Case No. CIV 486654

1    27.    SiRF did not pay Orrick the fair value of the services rendered on its behalf nor for

2    the expenses incurred on and for the benefit of SiRF.

3    28.    No party besides SiRF has compensated or is obligated to compensate Orrick for

4    the services Orrick rendered to SiRF, or for the expenses incurred by Orrick on behalf of SiRF.

5    29.    As a direct result of SiRF's failure to pay Orrick the reasonable fees and expenses

6    demanded, Orrick has suffered damages in an amount to be proven at trial but not less than

7    approximately $10.15 million.

8    ### THIRD CAUSE OF ACTION

9    ### Quantum Valebant — Against SiRF

10    30.    Orrick re-alleges and incorporates herein by reference each and every allegation

11    set forth in paragraphs 1 to 16, above.

12    31.    At SiRF's request and engagement, Orrick purchased goods that were reasonably

13    required by SiRF as part of the legal services Orrick was rendering to SiRF.

14    32.    SiRF agreed to pay Orrick the value of the goods purchased on SiRF's behalf by

15    Orrick.

16    33.    Orrick demanded that SiRF pay it the value of the goods purchased on SiRF's

17    behalf by Orrick.

18    34.    SiRF did not pay Orrick the fair value of the goods purchased on its behalf.

19    35.    No party besides SiRF has compensated or is obligated to compensate Orrick for

20    the goods Orrick purchased on behalf of SiRF.

21    36.    As a direct result of SiRF's failure to pay Orrick the reasonable value of the goods

22    purchased on SiRF's behalf, Orrick has suffered damages in an amount to be proven at trial.

23    ### FOURTH CAUSE OF ACTION

24    ### Unjust Enrichment— Against SiRF

25    37.    Orrick re-alleges and incorporates herein by reference each and every allegation

26    set forth in paragraphs 1 to 16, above.

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23695\2027158.3

38.   SiRF obtained the benefit of professional legal services rendered to SiRF at SiRF's request by Orrick, of the expenditure of moneys on litigation-related costs on behalf of SiRF by Orrick, and of the goods purchased on SiRF's behalf by Orrick.

39.   Despite Orrick's demand for payment for these legal services, expenses, and goods, SiRF has not paid them.

40.   SiRF was unjustly enriched by its receipt, without payment, of Orrick's legal services, of goods purchased by Orrick for the benefit of SiRF, and by Orrick's payment of certain of SiRF's litigation-related expenses.

41.   No party besides SiRF has compensated or is obligated to compensate Orrick for the services Orrick rendered to SiRF or for the expenses incurred on behalf of it, including the value of goods purchased by Orrick.

42.   As a direct result of SiRF's failure to pay Orrick for the reasonable services, expenses, and goods provided and advanced, SiRF has been unjustly enriched in an amount to be proven at trial but not less than approximately $10.15 million.

## PRAYER

WHEREFORE, Orrick prays for judgment as follows:

1.   For actual damages according to proof at trial.

2.   For costs of suit incurred herein.

3.   For reasonable attorney's fees.

4.   For payment of the amount by which SiRF unjustly enriched itself by receiving Orrick's legal services, advancement of litigation costs, and goods, without paying for them, which amount is believed to be not less than approximately $10.15 million.

5.   For reasonable fees and expenses incurred in the performance of legal services on SiRF's behalf in quantum meruit, in an amount not less than approximately $10.15 million.

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23695\2027158.3

ORRICK'S CROSS-COMPLAINT AGAINST SiRF // Case No. CIV 486654

6.      For the reasonable value of the goods purchased by Orrick on SiRF's behalf in quantum valebant, in an amount according to proof at trial.

7.      For such pre- and post-judgment interest and such other hand further relief as the Court may deem proper.

DATED:  August 27, 2009

FARELLA BRAUN & MARTEL LLP

By: _John L. Cooper_

John L. Cooper

Attorneys for Defendant
ORRICK, HERRINGTON & SUTCLIFFE LLP

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400

- 7 -

23695\2027158.3

ORRICK'S CROSS-COMPLAINT AGAINST SiRF // Case No. CIV 486654

**EXHIBIT A**



# ORRICK

May 25, 2007

Fabio Marino
(650) 614-7353
fmarino@orrick.com

Nicolas S. Gikkas
Legal Counsel
SiRF Technology, Inc.
217 Devcon Drive
San Jose, CA 95112

Re: *In the Matter of Certain GPS Devices and Products Containing Same* (ITC Inv. No. 337-TA-602) and *In the Matter of Certain GPS Chips, Associated Software and Systems, and Products Containing Same* (ITC Inv. No. 337 TA 596)

Dear Nick:

We are pleased to confirm our representation of SiRF Technology, Inc. ("SiRF") in the above referenced matters. We are also representing the SiRF's co-respondents E-TEN Corp, Pharos Science & Applications, Inc., MiTAC International Corporation, and Mio Technology Limited. SiRF has agreed to be responsible for all of the bills for both it and its co-respondents.

My services will be billed at the rate of $635 per hour. Other attorneys working on this matter will bill their time between $355 - $745 per hour, depending on their experience. Orrick will discount these rates by 10% discount for the first $4,000,000 of fees billed. Fees greater than $4,000,000 will be billed at a discounted rate of 12.5%. The discount will apply to fees only.

Our fees are subject to adjustment annually and we will notify you ahead of time in case of any such adjustment. In addition, associates move up to the next class on October 1 of each year, and thus each individual associate's billing rate will increase at that time as well.

Disbursements for in-house services, such as postage, telephone charges, duplicating, word processing, delivery, etc., as well as certain third-party payments will be tracked on your account as they are incurred. In some instances, disbursements for in-house services may include the indirect expenses associated in providing the service. Ordinary incidental expenses of this type will be written off by Orrick. From time to time, the demands of the case may require more significant disbursements for which SiRF will be responsible. Such fees and disbursements incurred will be billed in monthly statements, which are payable upon receipt.

This letter also confirms that Orrick not currently performing work on behalf of Broadcom Corporation and is in the process of formally disengaging from Broadcom. In the unlikely event that Orrick's former representation of Broadcom results in a motion to disqualify Orrick from



ORRICK

Nicolas S. Gikkas
May 25, 2007
Page 2

representing SiRF in these matters, SiRF will not be billed for any of the fees or costs in
opposing such a motion.

In the unlikely event that circumstances make it necessary to do so, we reserve the right to
withdraw from this engagement for nonpayment of our fees or for any other reason authorized or
required by applicable rules of professional responsibility.

If the foregoing correctly sets forth the terms of our engagement, please date and sign the
enclosed copy of the letter and return it to me at your earliest convenience.

We appreciate this opportunity to serve you and look forward to working with you on this matter.

Sincerely,

Fabio Marino /RJB

Fabio E. Marino


AGREED:

May 25, 2007

Nicolas S. Gikkas



ORRICK

Nicolas S. Gikkas
May 25, 2007
Page 3

| Attorney | Billing Rate | Less 10% Discount | Less 12.5% Discount |
|---|---|---|---|
| Bill Anthony | $745.00 | $670.50 | $651.88 |
| Fabio Marino | $635.00 | $571.50 | $555.63 |
| Bas de Blank | $560.00 | $504.00 | $490.00 |
| Tess Norton | $510.00 | $459.00 | $446.25 |
| Ulysses Hui | $470.00 | $423.00 | $411.25 |
| Nic Merrin | $355.00 | $319.50 | $310.63 |
| Van Pearce | $355.00 | $319.50 | $310.63 |

John L. Cooper (State Bar No. 50324)
   jcooper@fbm.com
Scott Andrews (State Bar No. 243690)
   sandrews@fbm.com
Farella Braun & Martel LLP
235 Montgomery Street
San Francisco, CA  94104
Telephone:    (415) 954-4400
Facsimile:    (415) 954-4480

Attorneys for Defendant
ORRICK, HERRINGTON & SUTCLIFFE LLP

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN MATEO

UNLIMITED JURISDICTION

| | |
|---|---|
| SiRF TECHNOLOGY, INC., | Case No. CIV 486654 |
| Plaintiff, | **PROOF OF SERVICE** |
| vs. | |
| ORRICK, HERRINGTON & SUTCLIFFE LLP, | |
| Defendant. | |
| ORRICK, HERRINGTON & SUTCLIFFE LLP, | |
| Cross-Complainant, | |
| vs. | |
| SiRF TECHNOLOGY, INC., | |
| Cross-Defendant. | |

I, the undersigned, declare that I am a resident of the State of California, employed in the

County of San Francisco, over the age of eighteen years and not a party to the within action.  My

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

23695\2029555.1

1    business address is: Farella Braun + Martel LLP, 235 Montgomery Street, 17th Floor, San

2    Francisco, California 94104.

3

4        On August 27, 2009 I served the within document(s):

5        **ANSWER OF ORRICK, HERRINGTON & SUTCLIFFE LLP TO UNVERIFIED COMPLAINT**

6

7        **ORRICK, HERRINGTON & SUTCLIFFE LLP'S CROSS-COMPLAINT FOR BREACH OF ENGAGEMENT AGREEMENT, QUANTUM MERUIT, QUANTUM VALEBANT AND UNJUST ENRICHMENT**

8

9    \_\_\_\_    **BY ELECTRONIC FILING:** the within document(s), the automatically generated notification for which constitutes service pursuant to General Order 45, Section IX(A) and (B).

10

11    \_\_\_\_    **PERSONAL DELIVERY:** by placing a true copy thereof, addressed as set forth below and enclosed in a sealed envelope for personal delivery by **Specialized Legal Services** to the addressee.

12

13    _X_    **MAIL:** by placing a true copy thereof, addressed as set forth below and enclosed in a sealed envelope with postage thereon fully prepaid and deposited for collection and mailing with the U.S. Postal Service. I am readily familiar with the ordinary business practice of this office for processing mail.

14

15

16    \_\_\_\_    **FEDERAL EXPRESS:** by placing a true copy thereof, addressed as set forth below and enclosed in a sealed envelope for delivery by overnight courier to the addressee.

17    \_\_\_\_    **FACSIMILE TRANSMISSION:** a true and correct copy transmitted via facsimile to each addressee listed below.

18

19    \_\_\_\_    **ELECTRONIC TRANSMISSION:** a true and correct copy transmitted to each of the parties at the electronic notification address last given by said party on any document which he or she has filed in this action and served upon this office.

20

21    John Antoni, Esq.

22    ANTONI ALBUS, LLP
   11836 W. Pico Boulevard

23    Los Angeles, CA 90064
   Telephone:    (310) 954-8020

24    Facsimile:     (310) 954-8988
   Email: antoni@aallp.net

25

26    Attorneys for Plaintiffs

27

28

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA 94104
(415) 954-4400

- 2 -

23695\2029555.1

PROOF OF SERVICE // Case No. CIV 486654

☒ State:  I certify and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

☐ Federal:  I declare that I am in the office of a member of the bar of this court at whose direction this service was made.

Executed in San Francisco, California on August 27, 2009.

Maria T. Zappas

23695\2029555.1

PROOF OF SERVICE // Case No. CIV 486654

Farella Braun + Martel LLP
235 Montgomery Street, 17th Floor
San Francisco, CA  94104
(415) 954-4400